# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHEY MARIE MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-943-STE |
| ) | |
| NANCY A. BERRYHILL, Deputy ) | |
| Commissioner for Operations, ) | |
| performing the duties and functions ) | |
| not reserved to the Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Commissioner's decision is **REVERSED AND REMANDED** for further administrative development.

## I.  PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. (TR. 116-119, 120-123, 127-129, 130-132). Following an

administrative hearing, Administrative Law Judge (ALJ) Sylke Merchan issued an unfavorable decision on February 3, 2016. (TR. 8-19). The Appeals Council (AC) granted Plaintiff's request for review, and issued an unfavorable decision.[1] (TR. 1-7). Thus, the decision of the AC became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

## II.  THE ADMINISTRATIVE DECISION

The AC followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the AC determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 1, 2014. (TR. 5). At step two, the AC determined that Ms. Moore had the following severe impairments: diabetes mellitus; hypertension; peripheral neuropathy; retinopathy; obesity; chronic obstructive pulmonary disease (COPD); and fibromyalgia. (TR. 5). At step three, the AC found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 5). At step four, the AC concluded that Ms. Moore retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She specifically, she can perform frequent balancing, stooping, kneeling, crouching, crawling; and climbing of stairs and ramps; and no climbing of ladders, ropes, and scaffold. She also can perform frequent near and far acuity, field of vision, and depth perception and no production coming from

---

[1] On July 5, 2017, the SSA Appeals Council granted Plaintiff's request for review of the ALJ's decision. (TR. 1-7). The Appeals Council issued an unfavorable decision, finding that the ALJ erred in finding that Plaintiff had filed concurrent claims for disability insurance benefits and supplemental security income. (TR. 5-6). Plaintiff actually filed claims for supplemental security income and widow's insurance benefits. (TR. 195-204).

2

> left (i.e. assembly line). She must avoid concentrated exposure to extreme temperatures, humidity, and environmental and respiratory irritants; and she must avoid even moderate exposure to hazards.

(TR. 5). The AC relied on vocational expert ("VE") testimony to find that, based on this RFC, Plaintiff was capable of performing her past relevant work as a short order cook. (TR. 5, 18, 69-70). The AC adopted the testimony of the VE and concluded that Plaintiff was not disabled. (TR. 6, 18-19).[2]

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges that (1) in assigning weight to the opinions of the State agency physicians, the ALJ improperly evaluated their assessments of Plaintiff's visual and environmental limitations; (2) the ALJ's assessment of Plaintiff's credibility was "conclusory" and lacking in "actual and specific evidence"; and (3) the ALJ failed to "specifically and properly" analyze the effects of Plaintiff's obesity. (ECF No. 14:2-14).

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

---

[2] The AC adopted the ALJ's statements regarding the issues in the case and the evidentiary facts, as applicable. The AC also adopted the ALJ's findings or conclusions regarding whether the claimant is disabled. (TR. 4).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ALJ'S EVALUATION OF STATE AGENCY OPINIONS

Plaintiff alleges that there are "internal inconsistencies" in the ALJ's decision to assign "considerable weight" to the opinions of both State agency physicians. (ECF No. 14:2). Specifically, Plaintiff alleges that there is an inconsistency in giving considerable weight to both the March 2014 opinion of State agency physician George Carrion, M.D., and the September 2014 opinion of agency physician Jack Bankhead, M.D., who assessed different functional limitations. (ECF No. 14:2). Dr. Carrion assessed the Plaintiff as being capable of performing light work with no additional limitations. (TR. 82-91). Dr. Bankhead also assessed Plaintiff as being capable of performing light work, but also assessed a range of postural, visual, and environmental limitations. (TR. 95-115).

Plaintiff further argues that the ALJ "crossed over the line" between medical and legal judgment by concluding that the term "limited", used by Dr. Bankhead in connection with Plaintiff's visual limitations, would allow Plaintiff to perform work-related visual tasks on a "frequent" basis. (ECF No. 14:2-3). Plaintiff cites the dictionary definition of both terms, arguing that the ALJ's RFC was "obviously error" since the words "limited" and "frequent" have very different meanings. (ECF No. 14:3).

Plaintiff further disputes the ALJ's finding that Plaintiff could perform work-related visual activities on a "frequent" basis, arguing that such a finding implies that Plaintiff had "perfect" vision for the remaining one-third of the workday.[3] Plaintiff argues that her visual limitations "will always be there" and that she will "always experience difficulty" with work-related visual tasks. (ECF No. 14:4).

Plaintiff is correct that there is a basic inconsistency in assigning considerable weight to two medical opinions that assess very different functional limitations. The ALJ has not provided a rationale for this disparity, and it is not the Court's task to provide one. "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) ("[W]e are not in a position to draw factual conclusions on behalf of the ALJ.").

An ALJ must "give consideration to all the medical opinions in the record [and] discuss the weight he or she assigns to such opinions." *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir.2012) (citations omitted). When assessing a medical opinion, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) and give good reasons for the weight he or she assigns to the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir.2003); 20 C.F.R. § 416.927. The ALJ has issued a flawed decision in which she fails to explain why she gives considerable weight to Dr. Carrion's opinion. On

---

[3] Social Security Ruling (SSR) 83-10 defines the term "frequent", for purposes of Social Security regulations, as occurring "from one-third to two-thirds of the time."

5

remand, the ALJ should separately consider the opinions of both Dr. Carrion and Dr. Bankhead, and provide specific reasons for the weight assigned to each opinion.

With respect to Plaintiff's semantic argument, this contention rests on an assumption about the meaning of the word "limited" in the context of an opinion provided by a Social Security consulting physician. As Plaintiff is aware, Dr. Bankhead's assessment that Plaintiff is "limited" with respect to her vision signifies that Plaintiff has a severe visual impairment, but is not intended to indicate what degree of functional limitation Plaintiff's visual impairments would impose in a work setting. Dr. Bankhead is not an eye doctor[4], and no treating optometrist or ophthalmologist has assessed specific functional limitations related to Plaintiff's visual impairments. In evaluating Plaintiff's visual impairments, the ALJ, consistent with SSR 96-7p, evaluated Plaintiff's subjective allegations, her activities of daily living, and her treatment history. (TR. 15-16). As such, the ALJ's evaluation of Plaintiff's visual impairments remains supported by substantial evidence.

Plaintiff's argument that the RFC implies that Plaintiff would have "perfect" vision for one-third of the day is not correct. First, SSR 83-10 defines the term frequent as occurring "from one-third to two-thirds of the time", meaning that Plaintiff could engage in the visual activities described in the RFC for somewhere between one-third and two-thirds of the workday. Second, Plaintiff makes an interesting linguistic point in arguing

---

[4] Dr. Bankhead's medical specialty code indicates a background in internal medicine. (TR. 103, 114), *see also* SSA's Program Operations Manual System (POMS) DI 24501.004(B) (explaining the SSA disability program's medical specialty codes).

6

that Plaintiff's visual limitations would remain consistent throughout the day, and would not fluctuate in the way that a restriction to "frequent" performance of visual activities appears to imply. (ECF No. 14:3-4). However, both Social Security regulations and the Selected Characteristics of Occupations (SOC) are clear that somewhat imprecise terms such as "occasionally", "frequently", and "constantly" are to be used in evaluating all of Plaintiff's physical impairments. *See* SSR 83-10; *see also* See U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. E (defining the terms "occasionally", "frequently", and "constantly").

Plaintiff further argues that the ALJ erred in finding that Plaintiff could perform her past work as a short order cook. Plaintiff points out the disparity between the RFC, which requires Plaintiff to avoid "concentrated" exposure to extreme temperatures, and the Dictionary of Occupational Titles (DOT) description of her past work, which indicates that a person performing this job would be "frequently" exposed to extreme heat and environmental conditions.[5] (ECF No. 14:4).

Plaintiff is correct that the ALJ and the AC both ignored the important issue concerning whether or not someone who must avoid concentrated exposure to temperature extremes could perform a job where she was exposed to such conditions on

---

[5] The DOT does not describe how often someone performing Plaintiff's past work as a short order cook would be exposed to temperature extremes. However, the Selected Characteristics of Occupations (SCO), a detailed companion volume to the DOT published by the US Department of Labor, provides that a short order cook would "frequently" be exposed to extreme heat, with the term "frequently" defined the same way it is in SSR 83-10. See U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Part A (1993), at 112 (describing the work requirements of a short order cook), App. E (defining the term "frequently" as a condition existing between one-third and two-thirds of time time).

a frequent basis. On remand, the ALJ and the VE should revisit this question and provide clarification concerning whether Plaintiff could perform her past relevant work, or any other work, given such a restriction.

The ALJ also appears to have erred in assessing RFC limitations related to hazards. The VE testified that Plaintiff's past work as a short order cook would "probably" involve "occasional to frequent", but not constant, exposure to hazards. The VE cited hazards associated with Plaintiff's past work such as "oil, fire, et cetera." (TR. 70). The VE further testified that Plaintiff would be unable to perform her past work only if she was required to avoid "even moderate exposure" to hazards. (TR. 70-72). Because the ALJ found that Plaintiff would need to avoid even moderate exposure to hazards, it appears that, based on the assessed RFC, Plaintiff would be unable to perform her past work. (TR. 14). On remand, the ALJ and the VE should consider whether these restrictions would, as the hearing transcript suggests, prevent Plaintiff from performing her past relevant work.

**VI.    OTHER ARGUMENTS**

Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility, and also alleges that the ALJ failed to "specifically and properly" analyze the effects of Plaintiff's obesity on her RFC. (ECF No. 14:7, 12).

The undersigned agrees with Plaintiff's argument concerning the ALJ's evaluation of the state agency physician opinions, and her argument concerning whether she retains the ability to perform her past relevant work. The Court will not address Plaintiff's remaining claims. See Watkins, 350 F.3d at 1299 ("We will not reach the remaining issues

8

raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on May 24, 2018.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE